1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

9

HAZEN SHOPBELL, et al.,

NO. 2:18-cv-1758-BJR

10

Plaintiffs,

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT

11

v.

NOTED: MARCH 22, 2019

12

WASHINGTON STATE DEPARTMENT
OF FISH AND WILDLIFE, et al.,

13

Defendants.

14

15

16

17

18

19

20

21

22

23

24

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT

i

2:18-cv-1758-BJR

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

**TABLE OF CONTENTS**

I.      RELIEF REQUESTED ................................................................ 1

II.     STATEMENT OF FACTS ........................................................ 1

III.    EVIDENCE RELIED UPON ..................................................... 7

IV.    ISSUES PRESENTED ............................................................ 7

V.      ARGUMENT ......................................................................... 8

      A.     Defendants Who Did Not Personally Participate in Any of the Alleged Civil Rights Violations Should Be Dismissed ............................................ 8

      B.     Plaintiffs Hazen Shopbell and Anthony Paul Were Lawfully Detained and Therefore Any Claims Against the Defendants Who Detained Those Plaintiffs Should Be Dismissed ......................................... 10

      C.     The Defendants are Entitled to Qualified Immunity ......................................... 15

          1.     The warrants were supported by probable cause and therefore valid.... 17

          2.     At a minimum all Defendants had at least arguable probable cause ..... 20

      D.     All Doe Defendants Should Be Dismissed ......................................... 20

VI.    CONCLUSION ................................................................... 21

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT

2:18-cv-1758-BJR

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Adams v. Williams*
  407 U.S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972)................................................ 14

*Aldabe v. Aldabe*
  616 F.2d 1089 (9th Cir. 1980) ........................................................................... 9, 12

*Allen v. City of Los Angeles*
  66 F.3d 1052 (9th Cir.1995) ................................................................................. 11

*Anderson v. Creighton*
  483 U.S. 635, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)........................................... 16

*Arnold v. Int'l Bus. Mach. Corp.*
  637 F.2d 1350 (9th Cir. 1981) ............................................................................... 9

*Ashcroft v. al-Kidd*
  131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) ...................................................... 15, 16

*Beck v. Ohio*
  379  U.S. 89, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964) .............................................. 14

*Bilbrey v. Brown*
  738 F.2d 1462 (9th Cir. 1984) .............................................................................. 19

*Bradford v. City of Seattle*
  557 F.Supp.2d 1189 (W.D.Wash. 2008) .............................................................. 13

*Brosseau v. Haugen*
  543 U.S. 194, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004).......................................... 17

*Chanel Inc. v. Yang*
  C 12-4428 PJH, 2013 WL 5755217 (N.D. Cal. Oct. 21, 2013)............................... 20

*City & Cty. of San Francisco, Calif, v. Sheehan*
  135 S. Ct. 1765, 191 L. Ed. 2d 856 (2015)............................................................ 17

*Coupons, Inc. v. Stottlemire*
  588 F. Supp. 2d 1069 (N.D. Cal. 2008) ................................................................ 21

*Crowe v. County of San Diego*
  608 F.3d 406 (9th Cir. 2010) ................................................................................ 19

*Dunaway v. New York*
  442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)....................................... 12, 13

*Fifty Associates v. Prudential Ins. Co. of Am.*
  446 F.2d 1187 (9th Cir. 1970) .............................................................................. 20

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT

2:18-cv-1758-BJR

iii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

*Gillespie v. Civiletti*
    629 F.2d 637 (9th Cir. 1980) ............................................................ 20

*Gonzalez v. City of Peoria*
    722 F.2d 468 (9th Cir.1983) ............................................................ 12

*Harlow v. Fitzgerald*
    457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).................. 15

*Hayes v. Florida*
    470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985)................. 12, 13

*Hope v. Pelzer*
    536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)............... 16

*Hunter v. Bryant*
    502 U.S. 224, 112 S. Ct. 532 (1991)................................................ 16

*Johnson v. Duffy*
    588 F.2d 740 (9th Cir. 1978) ........................................................ 9, 10

*Johnson v. Walton*
    558 F.3d 1106 (9th Cir. 2009) ......................................................... 18

*Jones v. Cannon*
    174 F.3d 1271 (11th Cir. 1999) ....................................................... 20

*Kaupp v. Texas*
    538 U.S. 626 (2003)......................................................................... 13

*KRL v. Estate of Moore*
    512 F.3d 1184 (9th Cir.2008) .......................................................... 17

*Lee v. Sandberg*
    136 F.3d 94 (2nd Cir. 1997) ............................................................ 20

*Leer v. Murphy*
    844 F.2d 628 (9th Cir. 1988) ............................................................. 9

*Malley v. Briggs*
    475 U.S. 335, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)......... 17, 18, 19

*Mannoia v. Farrow*
    476 F.3d 453 (7th Cir. 2007) ........................................................... 17

*Massachusetts v. Sheppard*
    468 U.S. 981 (1984)......................................................................... 18

*McKellip v. Las Vegas Metro. Police Dep't*
    2:05CV00897-BES-GWF, 2007 WL 173857 (D. Nev. Jan. 17, 2007) ............... 21

*Messerschmidt v. Millender*
    565 U.S. 535 (2012).......................................................................... 18

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

*Michigan v. DeFillippo*
443 U.S. 31, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979).........................14

*Michigan v. Summers*
452 U.S. 692, 101 S.Ct. 2587, 69L.Ed.2d 340 (1981)........................10

*Mitchell v. Forsyth*
472 U.S. 511, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985)....................15

*Mueller v. Auker*
576 F.3d 979 (9th Cir. 2009)...................................................17

*Owen v. City of Independence*
445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).......................13

*Pearson v. Callahan*
555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)....................16

*Pierson v. Ray*
386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)........................13

*Plumhoff v. Rickard*
134 S. Ct. 2012, 188 L. Ed. 2d 1056 (2014)................................16

*Polk County v. Dodson*
454 U.S. 312 (1981)............................................................9

*Rizzo v. Goode*
423 U.S. 362 (1976)............................................................9

*Sanchez v. Swyden*
139 F.3d 464 (5th Cir. 1998)..................................................20

*Saucier v. Katz*
533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)...................16

*Sherman v. Yakahi*
549 F.2d 1287 (9th Cir.1977)...................................................9

*Smith v. Alameda*
640 F.3d 931 (9th Cir. 2011).................................................17

*Terry v. Ohio*
392 U.S. 88 S.Ct. 1868........................................................10

*Tolan v. Cotton*
134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014).................................16

*Tomer v. Gates*
811 F.2d 1240 (9th Cir. 1987)................................................20

*United States v. Bautista*
684 F.2d 1286 (9th Cir. 1982).........................................10, 11, 12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

*United States v. Buffington*
815 F.2d 1292 (9th Cir.1987) .................................................................. 11

*United States v. Ceballos*
812 F.2d 42 (2d Cir.1987) ...................................................................... 12

*United States v. Davies*
768 F.2d 893 (7th Cir. 1985) .................................................................. 11

*United States v. Fouche*
776 F.2d 1398 (9th Cir. 1985) ................................................................ 14

*United States v. Gonzalez*
763 F.2d 1127 (10th Cir. 1985) .............................................................. 12

*United States v. Hardy*
855 F.2d 753 (11th Cir. 1988) ................................................................ 11

*United States v. Hernandez*
825 F.2d 846 (5th Cir.1987) ................................................................... 12

*United States v. Jacobs*
715 F.2d 1343 (9th Cir. 1983) ........................................................... 11, 12

*United States v. Leon*
468 U.S. 897 (1984) ............................................................................... 18

*United States v. Parr*
843 F.2d 1228 (9th Cir. 1988) ........................................................... 11, 12

*United States v. Patterson*
648 F.2d 625 (9th Cir. 1981) .................................................................. 11

*United States v. Ramirez*
473 F.3d 1026 (9th Cir. 2007) ................................................................ 14

*United States v. Richards*
500 F.2d 1025 (9th Cir. 1974) ................................................................ 11

*United States v. Sanders*
994 F.2d 200 (5th Cir. 1993) ............................................................. 11, 12

*United States v. Sharpe*
470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) ............................. 10

*United States v. Sokolow*
490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) .................................. 10

*United States v. Sutton*
794 F.2d 1415 (9th Cir. 1986) ................................................................ 15

*United States v. Thompson*
597 F.2d 187 (9th Cir. 1979) .................................................................. 11

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT

2:18-cv-1758-BJR

vi

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

*United States v. Wallace*
   213 F.3d 1216 (9th Cir. 2000) ........................................................................ 14

*Vargas Ramirez v. United States*
   93 F.Supp.3d 1207 (2015) .......................................................................... 12

*Wollin v. Gondert*
   192 F.3d 616 (7th Cir. 1999) ...................................................................... 20

## <u>Other Authorities</u>

42 U.S.C. § 1983 ............................................................................. 9, 13, 17

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT

vii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

2:18-cv-1758-BJR

# I. RELIEF REQUESTED

Defendants request that this Court dismiss all claims relating to any alleged civil rights violations that Plaintiffs have made against them and that all Doe Defendants also be dismissed for the reasons outlined below.

# II. STATEMENT OF FACTS

In the spring of 2015 Washington State Department of Fish and Wildlife (WDFW) Sergeant Erik Olson was conducting an investigation not relating to the Plaintiffs in this case. Declaration of Erik Olson in Support of Defendants' Motion for Summary Judgment (Olson Decl.), ¶ 4. During the course of that investigation Sergeant Olson learned that on May 23, 2015, a Tulalip tribal member named Joe Hatch (not a party to this case) sold "illegal crab" (i.e., crab caught out of season) to Puget Sound Seafood Distributors (PSSD) fish buyer Hai Ly – one day after the season closed. *Id.* Sergeant Olson learned from Mr. Ly, that he was ordered by Plaintiff Anthony Paul[1] to date the fish ticket with the date of sale being one day earlier – May 22, 2015. *Id.* Sergeant Olson also learned from Mr. Ly that he was instructed by Plaintiff Anthony Paul to back-date the check associated with that sale. *Id.*

In connection with that investigation, Sergeant Olson also learned that the subject of that investigation, Mr. Hatch, sold to Plaintiff Anthony Paul, crab that Mr. Hatch had caught out of season. Olson Decl., ¶ 5. Upon discovery of that information, WDFW became interested in other possible illegal activities of PSSD. Declaration of Wendy Willette in Support of Defendants' Motion for Summary Judgment (Willette Decl.), ¶ 3. Detective Willette then began an investigation that included examining discrepancies between the amount of fish purchased by PSSD and the amount accounted for in its required paperwork. *Id.*

Detective Willette spent a significant amount of time investigating PSSD, and gathered sufficient information to begin requesting warrants to address PSSD's financial activity. Willette Decl., ¶ 4. The focus of that investigation eventually became potential money laundering. *Id.* When Detective Willette gathered facts sufficient to support probable cause, she requested

---

[1] Plaintiffs Anthony Paul and Hazen Shopbell are the owners of PSSD. Second Amended Complaint, ¶ 3.

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT

2:18-cv-1758-BJR

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

warrants relating to Plaintiffs and PSSD in the relevant jurisdictions over the course of the next several months. *Id*. Those warrants generally applied to subject matters such as bank records, tax records, electronic information, cell phone records, physical searches, and others. *Id*. Based on her education, training and experience, Detective Willette believed that each and every warrant she obtained in connection with these Plaintiffs or PSSD was supported by probable cause. *Id*. Detective Willette further asserts that she did not embellish the facts nor did she omit facts she knew to be relevant in order to seek the warrants in any court. *Id*.

On March 1, 2016, Detective Willette spoke with an anonymous wholesale fish dealer who informed her that during 2015, PSSD had been buying crab from tribal fisherman for much lower than the market rate. Willette Decl., ¶ 5. That anonymous source also informed her there was an "air of intimidation" when Plaintiff Shopbell was present, and Plaintiff Shopbell would try to make tribal fishermen feel bad for not selling their crab to a tribal company (such as PSSD). *Id*. The wholesale fish dealer further informed Detective Willette that PSSD was attempting to monopolize the Tulalip crab market and that the Tulalip Tribe ordered PSSD to reimburse the affected fishermen. Willette Decl., ¶ 5.

As a result of the facts Detective Willette discovered over the course of her investigation, in May 2016, she prepared for a multi-faceted operation which would result in the simultaneous searches of 2615 East N Street, Tacoma (PSSD office); 3607 197th Avenue Court E, Lake Tapps (Plaintiffs Paul residence); and 8213 21st Avenue NW, Suite B, Tulalip (Plaintiff Shopbell residence). Willette Decl., ¶ 6. Detective Willette obtained warrants for that operation in Thurston County Superior Court (TCSC) because she had previously obtained warrants in that court, TCSC has jurisdiction over WDFW matters, and she happened to be in Thurston County on another matter at that time. *Id.*, Ex. 1.

However, after further consultation with her superiors at WDFW, Detective Willette was instructed to postpone the execution of those warrants. Willette Decl., ¶ 7. That delay was not a result of anything to do with the probable cause supporting the warrants and Detective Willette believed the warrants were supported by ample probable cause and she neither embellished nor

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

omitted any facts in order to sway the neutral judge in issuing them improperly. *Id.* Nevertheless, because the warrants Detective Willette obtained in TCSC expired before she could act on executing them, she obtained almost identical warrants from the King County Superior Court (KCSC) and the Tulalip Tribal Court (TTC) when WDFW was set to conduct those searches in June 2016. *Id.*, Exs. 2-3.

So, in June 2016, Detective Willette directed WDFW officers in a coordinated search of the PSSD office, Plaintiffs Pauls' residence, and Plaintiff Shopbell's residence. Willette Decl., ¶ 8. Detective Willette and every Officer who assisted in executing the warrants that is now also a Defendant in this case believed those searches were supported by probable cause. Declaration of Mike Cenci in Support of Defendants' Motion for Summary Judgment (Cenci Decl.), ¶ 3; Declaration of Chris Clementson in Support of Defendants' Motion for Summary Judgment (Clementson Decl.), ¶ 3; Declaration of Paul Golden in Support of Defendants' Motion for Summary Judgment (Golden Decl.), ¶ 3; Declaration of Natalie Hale in Support of Defendants' Motion for Summary Judgment (Hale Decl.), ¶ 3; Declaration of Anthony Jaros in Support of Defendants' Motion for Summary Judgment (Jaros Decl.), ¶ 4; Declaration of Jennifer Maurstad in Support of Defendants' Motion for Summary Judgment (Maurstad, Decl.) ¶ 3; Declaration of Alan Myers in Support of Defendants' Motion for Summary Judgment (Myers Decl.), ¶ 2; Olson Decl., ¶ 3; Declaration of Carly Peters in Support of Defendants' Motion for Summary Judgment (Peters Decl.), ¶ 3; Declaration of Shawnn Vincent in Support of Defendants' Motion for Summary Judgment (Vincent Decl.), ¶ 4; and Willette Decl., ¶¶ 4, 7-8, 9.b.-9.c., and 18. Although Detective Willette notified the TTC and the Tulalip Tribal Police Department (TTPD) of WDFW's intent to search Plaintiff Shopbell's home (which is on the Tulalip Reservation), at the direction of a Tulalip Tribal Detective, Detective Willette did not register the warrant and affidavit with the tribal court clerk due to confidentiality concerns. Willette Decl., ¶ 8.

On June 13, 2016, multiple WDFW officers and other agencies, executed the search warrants on the three separate locations. Willette Decl., ¶ 9. Each search is described as follows:

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT

2:18-cv-1758-BJR

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1.     Plaintiffs Pauls' Residence: The search team consisted of Detective Willette, Sergeant Erik Olson, and Officer Natalie Hale. *Id.* Also present but not Defendants in this case were Officer Lauren Wendt, Detective Brett Hopkins, Officer Hwa Kim, Officer Cory Branscomb, Officer Greg Haw, Property Evidence Custodian Greg Dutton, Officer Chris Smith, Officer Warren Becker, and Officer Trent Weidert. *Id.* WDFW officers served the search warrant on Plaintiffs Pauls' residence, and gained access to the locked home. *Id.*; see also Olson Decl., ¶¶ 9-20. Plaintiff Nicole Paul arrived at the home after entry had been gained and stated to WDFW Detective Hopkins, "So this is just about fish?" Detective Hopkins reported that Plaintiff Nicole Paul seemed relieved that the search warrant was only targeting fish. Willette Decl., ¶ 9.a. Plaintiff Anthony Paul arrived later and contacted his attorney who in turn contacted Detective Willette. *Id.*; see also Olson Decl., ¶¶ 18-19. Pursuant to the warrant, the search team seized some personal property (including paperwork and a safe). Willette Decl., ¶ 9.a.; see also Olson Decl., ¶¶ 9-20. WDFW officers cleared the scene without making any arrests. Willette Decl., ¶ 9.a.

2.     Plaintiff Shopbell's Residence: Defendant WDFW Sergeant Jennifer Maurstad and her team (which consisted of Defendants then-Officer Shawnn Vincent, Officer Anthony Jaros, and Officer Carly Peters) served a warrant on Plaintiff Shopbell's home. Willette Decl., ¶ 9.b. Tulalip Housing provided access to the home. *Id.* Plaintiff Tia Shopbell (aka Anderson) arrived on scene after WDFW had entered the residence. *Id.* Pursuant to the warrant they had with them, which Detective Willette obtained based on the probable cause developed through her investigation, WDFW officers searched the home, seized some personal property, and cleared the scene without making any arrests. *Id.* Defendant Sergeant Jennifer Maurstad and her team also searched a related vehicle that had been seized by TTPD in another location. *Id.*

3.     PSSD Office: WDFW Sergeant Brian Fairbanks and his team (which consisted of Detective Julie Cook, Officer Justin Maschhoff, Officer Greg Haw, Officer

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT

2:18-cv-1758-BJR

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

Jake Greshock, Officer Tyler Stevenson, Officer Cory Branscomb, and Evidence Technician Terry Ray-Smith, none of whom are defendants in this case) served a search warrant at the building that was thought to be PSSD's office. Willette Decl., ¶ 9.c. WDFW officers cut the lock on the gate of the property in order to gain access. *Id.* At the building, two women (neither of whom is a party in this case) were initially detained, but were later released. *Id.* Pursuant to the warrant Detective Willette obtained based on the probable cause developed through her investigation, WDFW Officers searched vehicles that were located on site. Willette Decl., ¶ 9.c. Hae Park, owner of "Be Happy Seafoods," not a party hereto, was interviewed as his business currently occupied the location (as opposed to PSSD). *Id.* Mr. Park stated that Plaintiff Anthony Paul is "unreliable" and that Plaintiff Shopbell is rarely there. *Id.*

Following those searches, Detective Willette continued to obtain search warrants needed in order to review the seized items, and learn more about Plaintiff Anthony Paul's and Plaintiff Hazen Shopbell's financial dealings. Willette Decl., ¶ 10.

On June 20, 2016, Property Evidence Custodian Dutton, TTPD officers (none of whom are parties hereto), and Detective Willette opened the Pauls' safe. Willette Decl., ¶ 11. Inside, the Officers found a firearm, ammunition, 121 unmarked pills (later identified as acetaminophen and hydrocodone – with no prescription), jewelry, paperwork, clothing, and $43,180.37 in cash and coins, which included four potentially counterfeit bills. *Id.* Detective Willette also reviewed several SD cards seized from the Paul residence and determined the images on the cards were of drug trafficking activity in locations where Plaintiff Anthony Paul had a controlling interest. *Id.*

An unexpected result of the searches was that Detective Willette found a photo message of Plaintiffs Pauls' young son standing in front of what appeared to her, based on her training and experience, to be several marijuana plants. Willette Decl., ¶ 12. The photograph was captioned: "Thuggin" in a message sent from Plaintiff Anthony Paul's telephone and stored on Plaintiff Hazen Shopbell's telephone. *Id.*

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT

2:18-cv-1758-BJR

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

As a result of Detective Willette's observations over the course of her investigation, Detective Willette contacted the TTPD regarding the health and welfare of the Paul children. Willette Decl., ¶ 13. Detective Willette's concerns were based on several factors, which included: the condition of the residence, in which she observed unsecured firearms and fireworks on the floor of the living area; Nicole Paul's failure to use seat belts for the kids; and the image of the Pauls' son in close proximity to several marijuana plants. *Id.* TTPD asked Detective Willette to instead notify State Child Protective Services (CPS). *Id.* She made that further contact, and understood that CPS subsequently conducted an investigation of the Paul family. *Id.* Detective Willette had no further involvement with CPS or the Paul family regarding that referral. *Id.*

In August 2016, Detective Willette was continuing her investigation and an interview with former PSSD fish buyer Jamie Torpey led her to Marine View Cold Storage in Burlington, WA in search of illegally harvested and purchased clams. Willette Decl., ¶ 14. On August 22, 2016, a team of officers and Detective Willette seized 1,180 pounds of PSSD's illegally harvested and illegally purchased clams from that facility. *Id.*

Then on November 22, 2016, Officer Cook and Detective Willette contacted Anthony McAleer at Rushmore Tax Services in Marysville, WA and served him with a warrant relevant to the WDFW investigation. Willette Decl., ¶ 15. Mr. McAleer reported to Detective Willette that he had tax information on Plaintiff Paul's real estate business and personal income, but none for PSSD. *Id.* Mr. McAleer also told Detective Willette, in what appeared to be a joking manner, that "Paul would send people after him if he talked." *Id.* They also discussed the forms that Paul needed to be using as he employed non-tribal workers, and Mr. McAleer stated that failure to complete the proper forms could get Plaintiff Paul in trouble with the Internal Revenue Service; Department of Enterprise Services; and Department of Labor and Industries. *Id.*

In April 2017, Detective Willette continued her investigation and WDFW teams served warrants on Rushmore Tax Services; NW Regional Accounting Services, Inc.; and DM Tax and Bookkeeping – parties associated with Plaintiff Paul, his companies, and Chickies Smoke Shop.

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

Willette Decl., ¶ 16. On May 25, 2017, while reviewing records from Pinnacle Capital Home Mortgage, Detective Willette saw a "gift letter" indicating a transfer of funds for $351,130.96 from Katherine Paul to Anthony Paul. *Id.* As with all others, Detective Willette believed she had probable cause for the warrants and she did not embellish the facts or omit facts she knew to be relevant in order to seek the warrants. Willette Decl., ¶¶ 4, 7-8, 9.b.-9.c., and 18.

As a result of Detective Willette's investigation, Plaintiffs Anthony Paul and Hazen Shopbell have criminal charges pending against them in Skagit County Superior Court. *Id.*, ¶ 17. Those matters are currently set for trial in August 2019. *Id.*

### III.    EVIDENCE RELIED UPON

Declaration of Mike Cenci;

Declaration of Chris Clementson;

Declaration of Paul Golden;

Declaration of Natalie Hale;

Declaration of Anthony Jaros;

Declaration of Jennifer Maurstad;

Declaration of Alan Myers;

Declaration of Erik Olson;

Declaration of Carly Peters;

Declaration of Donald Rothaus;

Declaration of Kelly Susewind;

Declaration of Jim Unsworth;

Declaration of Shawnn Vincent; and

Declaration of Wendy Willette with Exhibits 1-3 thereto.

### IV.    ISSUES PRESENTED

**A.      Whether the Defendants who did not personally participate in any of the alleged civil rights violations should be dismissed.**

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT

2:18-cv-1758-BJR

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

**B.** **Whether the claims against the Defendants who detained Plaintiffs Hazen Shopbell and Anthony Paul should be dismissed because those Plaintiffs were Lawfully Detained.**

**C.** **Whether the Defendants are entitled to Qualified Immunity because the warrants were supported by probable cause.**

**D.** **Whether the Doe Defendants should be dismissed because Plaintiffs have had ample time to identify them.**

# V. ARGUMENT

For purposes of this Motion, the named Defendants are categorized into four groups. Some of named Defendants belong in more than one of those groups.

1. Those that had no personal participation in the investigation, the warrants, or the detention of two Plaintiffs (Hazen Shopbell and Anthony Paul). Those Defendants are Director Kelly Susewind, former-Director Jim Unsworth, and Biologist Donald Rothaus.

2. Those that participated in the physical detention of Plaintiffs Hazen Shopbell and Anthony Paul (no other Plaintiffs were physically detained by anyone who is a party to this lawsuit). Those Defendants are Captain Alan Myers, Detective Chris Clementson, then-Officer Shawnn Vincent[2], and Officer Anthony Jaros.

3. Those that participated in obtaining the warrants of Plaintiffs' business and respective residences. That Defendant is Detective Wendy Willette.

4. Those that participated in executing the warrants on Plaintiffs' business and respective residences. Those Defendants are former Deputy Chief Mike Cenci (retired); Detective Chris Clementson; Deputy Chief Paul Golden; Officer Natalie Hale; Officer Anthony Jaros; Sergeant Jennifer Maurstad; Sergeant Erik Olson; Officer Carly Peters; Shellfish Biologist Donald Rothaus; and then-Officer Shawnn Vincent.

For the reasons outlined in detail below, each Defendant in each category is entitled to dismissal based on a lack of personal participation (first category); because they did not violate any Plaintiff's civil rights (second category); or because they are entitled to qualified immunity (all categories).

**A.** **Defendants Who Did Not Personally Participate in Any of the Alleged Civil Rights Violations Should Be Dismissed**

To obtain relief against a defendant in a civil rights action, a plaintiff must prove the particular defendant has caused or personally participated in causing the deprivation of a particular protected constitutional right. *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355

---

[2] Shawnn Vincent was an Officer during the relevant timeframe, he is now a Sergeant with WDFW.

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
PO Box 40111
7141 Cleanwater Drive SW
Olympia, WA 98504-0111
(360) 709-6470

(9th Cir. 1981); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir.1977). To be liable for "causing" the deprivation of a constitutional right, the particular defendant must commit an affirmative act, or omit to perform an act, which he or she is legally required to do, which causes the plaintiff's deprivation. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. *Rizzo v. Goode*, 423 U.S. 362, 370-71 and 375-77 (1976); *Leer v. Murphy*, 844 F.2d 628 (9th Cir. 1988). Sweeping conclusory allegations against an official are insufficient to state a claim for relief. The plaintiff must set forth specific facts showing a causal connection between each defendant's actions and the harm allegedly suffered by plaintiff. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); Rizzo, 423 U.S. at 371.

Plaintiffs cannot credibly support civil rights violations by Defendants Rothaus, Susewind, and Unsworth because none of those Defendants had any personal participation in the facts that give rise to Plaintiffs' alleged civil rights violations. Defendant Rothaus' only involvement with the investigation is his referring an anonymous information source to Detective Willette, later having a brief communication with that anonymous caller, and providing a spreadsheet to Detective Willette regarding crab harvest data. Rothaus Decl., ¶¶ 3-5. Such limited actions cannot be said to be a sufficient causal connection between Defendant Rothaus' actions and the harm allegedly suffered by Plaintiffs. *Aldabe*, 616 F.2d at 1092. Plaintiffs' claims against Defendant Rothaus should be dismissed.

Similarly, Defendants Susewind and Unsworth also had no personal participation in any of Plaintiffs' alleged harms. Neither of these Defendants had any direct participation in the investigation of Plaintiffs. Susewind Decl., ¶ 4; Unsworth Decl., ¶ 3. Plaintiffs' apparent claim against both these Defendants is apparently based on each Defendant's role as WDFW Director. However, defendants in a 42 U.S.C. § 1983 action cannot be held liable based on a theory of respondeat superior or vicarious liability. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). Absent some personal involvement by the defendants in the allegedly unlawful conduct of

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

subordinates, they cannot be held liable under § 1983. *Johnson*, 588 F.2d at 743-44. Plaintiffs cannot establish any personal involvement by either Defendant Susewind[3] or Defendant Unsworth in any of Plaintiffs' alleged constitutional deprivations and any such claims against these two Defendants should therefore be dismissed.

**B.      Plaintiffs Hazen Shopbell and Anthony Paul Were Lawfully Detained and Therefore Any Claims Against the Defendants Who Detained Those Plaintiffs Should Be Dismissed**

"[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause" *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) quoting *Terry v. Ohio*, 392 U.S. at 30, 88 S.Ct. 1868. The Federal courts have not imposed a time limit after which an investigatory detention – as we have here – can be maintained before the detention becomes an arrest. "If the purpose underlying a *Terry* stop – investigating possible criminal activity – is to be served, the police must under certain circumstances be able to detain the individual for longer than the brief time period involved in *Terry* and *Adams*." *Michigan v. Summers*, 452 U.S. 692, 700 n.12, 101 S.Ct. 2587 n.12, 69 L.Ed.2d 340 (1981). The detention need not be limited to asking a suspect only a few questions. *United States v. Bautista*, 684 F.2d 1286, 1290 (9th Cir. 1982), cert denied, 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 447 (1983).

In *United States v. Sharpe*, 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985) the Supreme Court summarized this flexibility be stating: "[W]e have emphasized the need to consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes." *Id.* at 685. That court further recognized that lower courts should not engage in "unrealistic second guessing" when determining whether the police pursued a means of investigation likely to confirm or dispel their suspicions. *Id.* at 686.

---

[3] In fact, Defendant Susewind was not even Director of WDFW until after the alleged deprivations occurred. Susewind Decl., ¶ 3.

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT

2:18-cv-1758-BJR

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

Moreover, the length of the detention alone is not enough to support a violation of the Fourth Amendment. *United States v. Hardy*, 855 F.2d 753, 761 (11th Cir. 1988), *cert. denied*, 489 U.S. 1019, 109 S.Ct. 1137, 103 L.Ed.2d 198 (1989). The court in *Hardy* found a 50 minute detention did not violate the Fourth Amendment. In fact, the Seventh Circuit went so far as to recognize that officers may detain a suspect for as long as needed to serve the purpose of investigating possible criminal activity. *United States v. Davies*, 768 F.2d 893, 901 (7th Cir. 1985), *cert. denied*, 474 U.S. 1008, 106 S.Ct. 533, 88 L.Ed.2d 464 (1985). And detentions in excess of an hour have been found to be reasonable by the Ninth Circuit. *United States v. Richards*, 500 F.2d 1025, 1028 (9th Cir. 1974).

Additionally, the fact that Plaintiffs were briefly handcuffed did not convert the investigatory detention into an arrest. *Bautista*, 684 F.2d at 1289, *cert. denied*, 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 446 (1983).

> We considered and rejected the same argument [that they were automatically under arrest once they were handcuffed] based on the same cases in *United States v. Patterson*, 648 F.2d 625, 632-34 (9th Cir. 1981). A brief but complete restriction of liberty, if not excessive under the circumstances, is permissible during a *Terry* stop and does not necessarily convert the stop into an arrest. *Id.* at 632-33. We specifically approved the use of handcuffs in *United States v. Thompson*, 597 F.2d 187 (9th Cir. 1979).

*Bautista*, 684 F.2d at 1289. During an investigatory detention, an officer may properly handcuff a person to reduce his own risk of suffering injury from violence. *United States v. Sanders*, 994 F.2d 200, 205 (5th Cir. 1993) (multiple internal citations omitted). "Police officers are entitled to employ reasonable methods to protect themselves and others in potentially dangerous situations." *Allen v. City of Los Angeles*, 66 F.3d 1052, 1057 (9th Cir.1995) citing *United States v. Jacobs*, 715 F.2d 1343, 1345-46 (9th Cir. 1983).

Similarly, placement in a patrol car does not convert an investigative detention into an arrest. *United States v. Parr*, 843 F.2d 1228, 1231 (9th Cir. 1988).

> Moreover, a conclusion that Parr was under arrest when he was placed in the patrol car is at odds with several of our prior decisions where far greater restraints were placed on suspects and we nevertheless held that no arrests occurred. *See, e.g., United States v. Buffington*, 815 F.2d 1292, 1300 (9th Cir.1987) (no arrest when defendants "forced from their car and made to lie down on wet pavement at gunpoint"); *United States v. Jacobs*, 715 F.2d 1343, 1345-46

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

(9th Cir.1983) (per curiam) (no arrest when suspect removed from car at gunpoint and ordered to "prone out" on ground); *United States v. Bautista*, 684 F.2d 1286, 1289-90 (9th Cir.1982) (handcuffing of suspect did not convert stop into an arrest), *cert. denied*, 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 447 (1983). We conclude that the district court erred in determining that Parr was under arrest when he was placed in the police car.

*Parr*, 843 F.2d at 1231. Defendants here only briefly placed Plaintiffs Hazen Shopbell and Anthony Paul in handcuffs when they decided to begin transporting those two Plaintiffs to the Marysville Police Department. Myers Decl., ¶ 5; Vincent Decl., ¶ 6; and Jaros Decl., ¶ 6. And even then, the handcuffs were required by WDFW for officer safety purposes. Vincent Decl., ¶ 6; see also Myers Decl.¶ 5; and Jaros Decl., ¶ 6. Such a procedure is expressly permitted by the Ninth Circuit in *Sanders*, 994 F.2d at 205; *Allen*, 66 F.3d at 1057; and *Jacobs*, 715 F.2d 1345-46.

What may convert an investigatory detention into an arrest, however, is transporting a detained individual to the police station. *Id.*

[A] distinction between investigatory stops and arrests may be drawn at the point of transporting the defendant to the police station. *See, e.g., Hayes v. Florida*, 470 U.S. 811, 816, 105 S.Ct. 1643, 1646, 84 L.Ed.2d 705 (1985) (line between investigatory detention and arrest is crossed when police transport suspect to police station); *Dunaway v. New York*, 442 U.S. 200, 216, 99 S.Ct. 2248, 2258, 60 L.Ed.2d 824 (1979) (arrest occurs when suspect is seized and transported to the police station for interrogation); *United States v. Hernan*dez, 825 F.2d 846, 851 (5th Cir.1987) (removal of suspect from the scene of the stop to police headquarters usually marks the point at which an investigative stop becomes a de facto arrest), *cert. denied*, 484 U.S. 1068, 108 S.Ct. 1032, 98 L.Ed.2d 996 (1988); *United States v. Ceballos*, 812 F.2d 42, 49 (2d Cir.1987) (transporting suspect to police station exceeds bounds of Terry stop and becomes an unlawful arrest); [*United States v.*] *Gonzalez*, 763 F.2d [1127] at 1133 [(10th Cir. 1985)](forcing suspect to go to police station crosses the line into de facto arrest); *Gonzalez v. City of Peoria*, 722 F.2d 468, 477 (9th Cir.1983) (defendant is arrested when transported to police station and placed in cell or interrogation room even if the purpose of the seizure is investigatory rather than accusatory).

*Parr*, 843 F.2d at 1231. The more recent case of *Vargas Ramirez v. United States*, 93 F.Supp.3d 1207 (2015), is in accord.

Unlike those cases, Plaintiffs Hazen Shopbell and Anthony Paul were never placed in a cell, nor did they even make it as far as the police station with Defendants Myers, Vincent, and Jaros. Myers Decl., ¶¶ 5-6; Vincent Decl., ¶¶ 6-7; and Jaros Decl., ¶¶ 6-7. Plaintiffs Shopbell

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT

2:18-cv-1758-BJR

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

and Paul were returned to the boat launch and free to leave at that point. *Id.*; see also Clementson Decl., ¶ 5.

Unlike with Defendants Myers, Vincent, and Jaros, however, Detective Clementson *did* take Plaintiff Shopbell to the Marysville Police Department and interviewed him there. *Id.* But unlike with Defendants Myers, Vincent, and Jaros, Defendant Clementson was neither detaining nor arresting Plaintiff Shopbell and accordingly he was not handcuffed. *Id.* In discussing the issue regarding transporting a person to the police station converts a detention into an arrest, the Supreme Court in *Kaupp v. Texas*, 538 U.S. 626 (2003) summarized the rule as "involuntary transport to a police station for questioning is 'sufficiently like arres[t] to invoke the traditional rule that arrests may constitutionally be made only on probable cause.' " *Id.* at 630.

Applying that principle to Detective Clementson's transport of Plaintiff Shopbell demonstrates that his was not an arrest. First, Plaintiff Shopbell was made aware that his going to the Marysville Police Station was voluntary and he was free to leave at any time. Clementson Decl., ¶ 5. Second, Plaintiff Shopbell was not cuffed during Detective Clementson's transport because he was neither detained nor in custody. *Id.* In short, Detective Clementson's interaction with Plaintiff Shopbell was not "sufficiently like an arrest" that probable cause was necessary as anticipated by the Supreme Court in *Hayes*, *Dunaway*, and *Knapp*. Nevertheless, regardless of whether Plaintiffs Hazen Shopbell and Anthony Paul were merely detained or under arrest, it matters not because probable cause existed at that time to arrest either or both. Clementson Decl., ¶ 3; Myers Decl., ¶ 5; Vincent Decl., ¶ 6; and Jaros Decl., ¶ 6; see also Willette Decl., Exs. 1-3.

Probable cause to arrest is a complete defense to the liability of a police officer for a 42 U.S.C. § 1983 claim for actions arising out of an arrest. "The existence of probable cause vitiates any claim of unlawful arrest, *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), and acts as a complete defense to the liability of an officer under § 1983. *Owen v. City of Independence*, 445 U.S. 622, 637, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980)." *Bradford v. City of Seattle*, 557 F.Supp.2d 1189, 1199 (W.D.Wash. 2008). Probable cause exists

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

"when police officers have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *United States v. Wallace*, 213 F.3d 1216, 1220 (9th Cir. 2000), quoting *United States v. Fouche*, 776 F.2d 1398, 1403 (9th Cir. 1985).

"Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972). Therefore, the evidentiary standard for probable cause is significantly lower than the standard that is required for conviction. *See Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979) ("We have made clear that the kinds and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest.") (citations omitted). Probable cause exists if "at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense." *Beck v. Ohio*, 379  U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964) (citations omitted).

Because Defendants Captain Myers, then-Officer Vincent, and Officer Jaros – the only Defendants that actively detained (or arrested) *any* of the Plaintiffs – had probable cause to undertake the actions they did, all Plaintiffs' claims against them should be dismissed. Each of the Defendants here, including Detective Clementson, examined the warrants obtained by Detective Willette and each of them concluded there was ample probable cause to arrest Plaintiffs even before any of the Defendants went to the public boat launch and detained the Plaintiffs. Clementson Decl., ¶ 3; Myers Decl., ¶ 3; Vincent Decl., ¶ 4; and Jaros Decl., ¶ 4. In *United States v. Ramirez*, 473 F.3d 1026 (9th Cir. 2007), *cert. denied*, 552 U.S. 866 (2007), the Ninth Circuit Court held that pursuant to the "collective knowledge doctrine,"

> [w]here one officer knows facts constituting reasonable suspicion or probable cause (sufficient to justify action under an exception to the warrant requirement), and he communicates an appropriate order or request, another officer may conduct a warrantless stop, search, or arrest without violating the Fourth Amendment.

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

473 F.3d at 1037. The Ninth Circuit also explained the collective knowledge doctrine as follows:

> [u]nder the collective knowledge doctrine we must determine whether an investigatory stop, search, or arrest complied with the Fourth Amendment by "look[ing] to the collective knowledge of all the officers involved in the criminal investigation although all of the information known to the law enforcement officers involved in the investigation is not communicated to the officer who actually [undertakes the challenged action]."

473 F.3d at 1032 (*citing United States v. Sutton*, 794 F.2d 1415, 1426 (9th Cir. 1986)). Here, the officers who detained or transported Plaintiffs Hazen Shopbell and Anthony Paul, were aware of and correctly believed the warrants supported ample probable cause to arrest these two Plaintiffs. Clementson Decl., ¶ 3; Myers Decl., ¶ 3; Vincent Decl., ¶ 4; and Jaros Decl., ¶ 4; see also Willette Decl., Exs. 2-3. Consequently, whether this Court finds Plaintiffs Hazen Shopbell or Anthony Paul were under investigatory detention or under arrest, probable cause existed against them and the civil rights claims against Defendants Clementson, Myers, Vincent, and Jaros should be dismissed.[4]

## C. The Defendants are Entitled to Qualified Immunity

Law enforcement officers who are sued in their individual capacities in an action under 42 U.S.C. § 1983 are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011).

Qualified immunity is an entitlement not to stand trial or face the burdens of litigation. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985). It is an immunity from suit rather than a mere defense to liability. *Id*. Qualified immunity gives ample

---

[4] Because probable cause existed to arrest Plaintiffs, several of Plaintiffs' other claims may also be properly dismissed. Given the page restrictions, however, Defendants are attempting to address in this Motion largely qualified immunity as to the 13 named Defendants, the four Plaintiffs listed in their Complaints. Defendants anticipate filing additional dispositive motions to address the remaining claims.

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

room for mistaken judgment by protecting all but the plainly incompetent or those who knowingly violate the law. *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S. Ct. 532 (1991). Because qualified immunity is "an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009).

A government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." *Ashcroft*, 131 S. Ct. at 2083 (internal citations omitted). The salient question is whether the state of the law at the time of an incident provided "fair warning" to the defendants "that their alleged [conduct] was unconstitutional." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014). "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001) (receded from on other grounds by *Pearson, supra*).

For purposes of qualified immunity, the salient question is whether the state of the law at the time gives officials fair warning that their conduct is unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 740, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *Tolan v. Cotton*, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014); *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.") (internal quotations omitted); *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083, 179 L.Ed. 2d 1149 (2011)) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."); *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023, 188 L. Ed. 2d 1056 (2014) (internal citations omitted) ("In addition, we have repeatedly told courts . . . not

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."); *City & Cty. of San Francisco, Calif, v. Sheehan*, 135 S. Ct. 1765, 1777-1778, 191 L. Ed. 2d 856 (2015) (Supreme Court reversed the Ninth Circuit's denial of qualified immunity where it was not clearly established that officers were required to provide accommodations to an armed, violent, and mentally ill individual, and no precedent clearly established that there was not an objective need for immediate reentry into resident's room to prevent her from escaping or gathering additional weapons).

### 1.    The warrants were supported by probable cause and therefore valid

In a false arrest case challenging probable cause for a warrant, the arresting officer enjoys qualified immunity unless "the warrant is so lacking in indicia of probable cause as to render official belief in its existing unreasonable. . . ." *Malley v. Briggs*, 475 U.S. 335, 344-45, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986); *see also KRL v. Estate of Moore*, 512 F.3d 1184, 1190 (9th Cir.2008) ("[A]n officer who prepares or executes a warrant lacking probable cause is entitled to qualified immunity unless no officer of reasonable competence would have requested the warrant."). Where judicial deception is alleged, plaintiff must show the applying officer deliberately or recklessly made false statements or omissions material to probable cause. *Smith v. Alameda*, 640 F.3d 931, 937 (9th Cir. 2011). "Although the privilege of qualified immunity is a defense, the plaintiff carries the burden of defeating it." *Mannoia v. Farrow*, 476 F.3d 453, 457 (7th Cir. 2007). Plaintiffs cannot carry their burden.

Officers are entitled to qualified immunity in § 1983 claims of false arrest or improper searches pursuant to improperly issued warrants when the officer "makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances." *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004). Qualified immunity allows for reasonable mistakes, allows officers to "make difficult decisions in challenging situations" without fear of liability, which would "disrupt[ ] the effective performance of their public duties." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009).

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT

2:18-cv-1758-BJR

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

While not a guarantee of qualified immunity, the approval of the warrant by a "neutral and detached magistrate" adds even more weight to the qualified immunity determination. Finding qualified immunity in a search case, the Supreme Court found: "Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in 'objective good faith.' " *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012), quoting *United States v. Leon*, 468 U.S. 897, 922-923 (1984).

The Supreme Court recognized in *Messerschmidt* that even approval by a neutral magistrate does not necessarily insulate police officers from suit where "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Messerschmidt*, 565 U.S. at 547, quoting *Malley*, 475 U.S. at 341. Importantly, however, "the threshold for establishing this exception is a high one, and it should be." *Messerschmidt*, 565 U.S. at 547; see also *Johnson v. Walton*, 558 F.3d 1106, 1111 (9th Cir. 2009). The Supreme Court in *Messerschmidt* granted qualified immunity to the officers in that case, observing:

> The question in this case is not whether the magistrate erred in believing there was sufficient probable cause to support the scope of the warrant he issued. It is instead whether the magistrate so obviously erred that any reasonable officer would have recognized the error. The occasions on which this standard will be met may be rare, but so too are the circumstances in which it will be appropriate to impose personal liability on a lay officer in the face of judicial approval of his actions."

*Messerschmidt*, 565 U.S. at 556. Like the defendants in the instant case, the officers there "took every step that could reasonably be expected of them." *Id.*, quoting *Massachusetts v. Sheppard*, 468 U.S. 981, 989 (1984).

Here, each and every Defendant who was involved in the search of Plaintiffs' respective residences or business or was involved in the detention of either Plaintiffs Hazen Shopbell and Anthony Paul, or both, examined the warrant relative to their involvement and each and every Defendant determined on his or her own that the warrants were supported by probable cause.

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

Cenci Decl., ¶ 3; Clementson Decl., ¶ 3; Golden Decl., ¶ 3; Hale Decl., ¶ 3; Jaros Decl., ¶ 4; Maurstad Decl., ¶ 3; Myers Decl., ¶ 2; Olson Decl., ¶ 3; Peters Decl., ¶ 3; Vincent Decl., ¶ 4; Willette Decl., ¶¶ 4, 7-8, 9.b.-9.c., and 18. All of those Defendants had significant training in search warrants and establishing probable cause. Cenci Decl., ¶ 3; Clementson Decl., ¶¶ 2-3; Golden Decl., ¶¶ 2-3; Hale Decl., ¶¶ 2-3; Jaros Decl., ¶¶ 2-3; Maurstad Decl., ¶¶ 2-3; Myers Decl., ¶¶ 2-3; Olson Decl., ¶¶ 2-3; Peters Decl., ¶¶ 2-3; Vincent Decl., ¶¶ 2-4; Willette Decl., ¶ 2.

The fact that every one of these highly-trained police officers found the warrants provided ample probable cause surely militates in favor of finding that their participation in the execution of the warrants were by all means reasonable as a matter of law and thus supported by the direction the Supreme Court provided in *Malley*.

Couple that with the resounding fact that the warrants were issued not by one neutral magistrate but by *two* (remember almost exactly the same warrants were issued by the Thurston County Superior Court and then again by the King County Superior Court after the TCSC warrants had expired.) *See* Willette Decl., ¶¶ 6-7, Exs. 1-2. And the warrants themselves clearly provide probable cause that no reasonable officer would doubt their validity let alone believe them to be unsupported by probable cause. See Willette Decl., Exs. 1-3.

> We have held that officers are immune from suit "when they reasonably believe that probable cause existed, even though it is subsequently concluded that it did not, because they 'cannot be expected to predict what federal judges frequently have considerable difficulty in deciding and about which they frequently differ among themselves.'"

*Crowe v. County of San Diego*, 608 F.3d 406, 433 (9th Cir. 2010). Again, police officers are entitled to qualified immunity from suit for damages arising out of a Fourth Amendment violation if a reasonable officer with the same facts as the defendant officer could have reasonably believed that the arrest was supported by probable cause even if a court later determines it was not. *Bilbrey v. Brown*, 738 F.2d 1462, 1467 (9th Cir. 1984).

Indeed, qualified immunity safeguards "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. at 341. Defendants here were neither plainly

DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

2:18-cv-1758-BJR

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

incompetent, nor did they knowingly violate the law. Plaintiffs' civil rights claims against them should be dismissed.

### 2.    At a minimum all Defendants had at least arguable probable cause

In order to be entitled to qualified immunity from a § 1983 claim for unlawful arrest, the arresting officer need only have "arguable probable cause," not actual probable cause. *Wollin v. Gondert*, 192 F.3d 616, 621 (7th Cir. 1999) (citations omitted). *See also Jones v. Cannon*, 174 F.3d 1271, 1283 n.3 (11th Cir. 1999) ("Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity injury.") and *Lee v. Sandberg*, 136 F.3d 94, 102 (2nd Cir. 1997) ("The issue for immunity purposes is not probable cause in fact but 'arguable' probable cause."). "[A] public official may successfully assert the defense of qualified immunity even though the official violates a person's civil rights, provided the official's conduct was objectively reasonable." *Sanchez v. Swyden*, 139 F.3d 464, 467 (5th Cir. 1998). Even if mistaken, if the officers acted under an objectively reasonable belief that the arrest was lawfully supported by probable cause, they are entitled to qualified immunity. *Tomer v. Gates*, 811 F.2d 1240, 1242 (9th Cir. 1987).

Under those legal principles, even if this Court were to find the warrants lacked actual probable cause, they are supported by arguable probable cause nonetheless. Likewise, the detaining and transporting officers (Defendants Clementson, Myers, Vincent, and Jaros) also had arguable probable cause to support their actions. The civil rights claims against all Defendants should be dismissed because they are entitled to qualified immunity.

### D.    All Doe Defendants Should Be Dismissed

The Ninth Circuit disfavors fictitious parties. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (internal citation omitted) ("[a]s a general rule, the use of 'John Doe' to identify a defendant is not favored."); *Fifty Associates v. Prudential Ins. Co. of Am.*, 446 F.2d 1187, 1191 (9th Cir. 1970) (citing to earlier Ninth Circuit precedent). Following this precedent, District Courts routinely dismiss Does. *E.g. Chanel Inc. v. Yang*, C 12-4428 PJH, 2013 WL 5755217 (N.D. Cal. Oct. 21, 2013) ("[t]here is no provision in the Federal Rules of Civil Procedure

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

permitting the use of fictitious defendants."); *Coupons, Inc. v. Stottlemire*, 588 F. Supp. 2d 1069, Footnote 2 (N.D. Cal. 2008) "The Ninth Circuit has spoken approvingly of district courts that have dispatched fictitious persons on their own motion." *McKellip v. Las Vegas Metro. Police Dep't*, 2:05CV00897-BES-GWF, 2007 WL 173857 (D. Nev. Jan. 17, 2007).

Under FRCP 4(m), all defendants must be served within 90 days of a complaint's filing. If not, the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." The court is only required to extend time to serve "if the plaintiff shows good cause." *Id.* Plaintiffs filed their initial Complaint in the KCSC on October 29, 2018, naming 20 Doe Defendants. Plaintiffs then filed an Amended Complaint in that same court on November 8, 2018. Defendants removed the matter to this Court on December 7, 2018. And Plaintiffs filed a Second Amended Complaint on February 6, 2019, and still none of those Doe Defendants have been substituted-in or served or identified. All should be dismissed.

## VI.     CONCLUSION

For the foregoing reasons all Defendants respectfully request that this Court dismiss all Plaintiffs' constitutional claims against them with prejudice.

DATED this 28th day of February, 2019.

ROBERT W. FERGUSON
Attorney General


*/s/ Eric A. Mentzer*
ERIC A. MENTZER, WSBA #21243
Senior Counsel
Attorneys for Defendants

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

**DECLARATION OF SERVICE**

I hereby declare that on this day I caused the foregoing document to be electronically filed with the Clerk of the Court using the Court's CM/ECF System which will send notification of such filing to the following:

Gabriel S. Galanda
Bree R. Black Horse
Galanda Broadman, PPLC
P.O. Box 15146
Seattle, WA 98115
*Attorneys for Plaintiffs*

DATED this 28th day of February, 2019, at Tumwater, Washington.

/s/ Eric A. Mentzer
ERIC A. MENTZER, WSBA #21243
Senior Counsel

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT

22

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

2:18-cv-1758-BJR