The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HAZEN SHOPBELL and ANTHONY PAUL,

Plaintiffs,

v.

WASHINGTON STATE DEPARTMENT OF
FISH AND WILDLIFE, *et al.*,

Defendants.

NO. 2:18-cv-1758

**ORDER GRANTING IN PART DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT; AND REMANDING STATE LAW CLAIMS TO KING COUNTY SUPERIOR COURT**

## I.    INTRODUCTION

Plaintiffs originally filed this case in King County Superior Court against the Washington State Department of Fish and Wildlife ("WDFW") and a number of WDFW officers involved in an investigation of Plaintiffs Hazen Shopbell and Anthony Paul. *See* Dkt. No. 1. Defendants subsequently removed the case to this Court. *Id*. On July 14, 2020, the Court granted in part Defendants' Motion for Partial Summary Judgment, dismissing several of the claims and individual Defendants. *See* Order Granting in Part and Denying in Part Defendants' Motion for Partial Summary Judgment, ("Order Re: Summ. J."), Dkt. No. 74. In the wake of that order, there remain only three named Defendants in this case: current or former WDFW officers Anthony Jaros, Shawn Vincent, and Alan Myers in their individual capacity, against whom Plaintiffs have asserted federal civil rights claims under 42 U.S.C. §§ 1983; and WDFW, against which agency

Plaintiffs have asserted state law negligence claims.

In the Court's order on Defendants' first Motion for Partial Summary Judgment, the Court concluded that the three named individual Defendants had not submitted enough information to allow the Court to evaluate their request for qualified immunity from Plaintiffs' claims. In this Second Motion for Summary Judgment, Defendants supply the additional information that the Court found lacking in their first motion for summary judgment. Again, Defendants seek dismissal of Plaintiffs' claims based on the grounds that they are entitled to qualified immunity, asserting their actions were supported by probable cause. For the reasons outlined below, the Court dismisses all remaining claims against the individual Defendants, and remands Plaintiffs' claims against WDFW to the Superior Court of Washington at King County for further consideration.

## II.      FACTUAL BACKGROUND

A complete factual background to this case is outlined in the Court's first order on summary judgment. *See* Order Re: Summ. J., at 2-8. In sum relevant to the current motion, Plaintiffs in this matter are Washington residents Anthony Paul and Hazen Shopbell, both enrolled members of the Tulalip Tribes and, respectively, the owner and manager of Puget Sound Seafood Distributors, ("PSSD"), a wholesale seafood buyer and distributor. *See* Third Am. Compl., ("TAC"), ¶¶ 7-8, Dkt. No. 81. Defendant Washington State Department of Fish and Wildlife is a state agency, the Law Enforcement Program of which is charged with, among other duties, enforcing RCW Title 77, Washington's Fish and Wildlife code. In 2016, in their capacity as WDFW law enforcement officers, Defendants Vincent, Jaros, and Myers participated in an ongoing investigation into the allegedly illegal activities of Plaintiffs and PSSD. TAC, ¶ 20.

More specifically, on June 13, 2016, the three named Defendants were involved in the

ORDER GRANTING IN PART SECOND MOTION FOR
SUMMARY JUDGMENT
- 2

1   detention of Shopbell and Paul in connection with this investigation. That day began with a

2   briefing conducted by the lead investigator, WDFW Detective (and a former defendant in this

3   case) Wendy Willette, who briefed over a dozen law enforcement officers from several agencies,

4   gathered at locations throughout the Puget Sound region. *See* Declaration of Alan Myers in

5   Support of Defendants' Second Motion for Summary Judgment (Myers Decl.) ¶ 4; Declaration of

6   Anthony Jaros in Support of Defendants' Second Motion for Summary Judgment (Jaros Decl.) ¶

7   3; Declaration of Shawnn Vincent in Support of Defendants' Second Motion for Summary

8   Judgment (Vincent Decl.) ¶ 5.The briefing provided information regarding the planned execution

9   of search warrants for three separate locations: the homes of Paul and Shopbell, and what was

10  believed to be the PSSD offices in Tacoma. *Id*.

11          At some point during that morning while the searches were in progress, officers became

12  aware that Paul and Shopbell had been located at the Port of Everett Boat Launch. Defendants

13  Jaros, Vincent, and Myers were directed to go to the boat launch, and detain the two Plaintiffs for

14  questioning. Myers Decl., ¶ 5; Jaros Decl. ¶ 5. The officers located Plaintiffs, informed them they

15  were not free to leave, and placed Plaintiffs, in handcuffs, in marked WDFW vehicles for

16  transport to the Marysville Police Department. Midway to the station, the officers were advised

17  by superiors that Plaintiffs were to be told that the questioning was voluntary, at which point both

18  Plaintiffs asked to be returned to the boat launch. *Id*. ¶¶ 6-7. Shopbell then agreed to be taken in

19  for an interview, but Paul declined and was released. Decl. of Chris Clementson, ¶ 5, Dkt. No 32.

20  Plaintiffs' claims for false arrest and false imprisonment challenge the sufficiency of probable

21  cause underlying this arrest.[1]

---

[1] Plaintiffs' assertion that in its prior order "this Court has already ruled . . . that [Plaintiffs] were arrested" is
inaccurate. Pls.' Opp. Br. at 13. While the Court observed that "a reasonable jury could well conclude the detention
amounted to an arrest," it declined to rule on the question, explicitly noting that "the allegations here create a dispute

ORDER GRANTING IN PART SECOND MOTION FOR
SUMMARY JUDGMENT
- 3

1

### III.    DISCUSSION

2

**A.  Standard on a Motion for Summary Judgment**

3

Summary judgment is appropriate when, viewing the facts in the light most favorable to

4 the non-moving party, there is no genuine issue of material fact which would preclude summary

5 judgment as a matter of law. Fed.R.Civ.P. 56(a). Once the moving party has satisfied its burden, it

6 is entitled to summary judgment if the non-moving party fails to present "specific facts showing

7 that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  In

8 evaluating summary judgment for qualified immunity cases, viewing the evidence in the light

9 most favorable to the non-moving party "usually means adopting ... the plaintiff's version of the

10 facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

11

**B.  Qualified Immunity From Claims for "False Arrest" and "False Imprisonment" Under 42 U.S.C. § 1983**

12

13

Qualified immunity is a doctrine that "protects government officials from liability for civil

14 damages insofar as their conduct does not violate clearly established statutory or constitutional

15 rights of which a reasonable person would have known." *Reese v. Cty. of Sacramento*, 888 F.3d

16 1030, 1037 (9th Cir. 2018) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Qualified

17 immunity applies either where there was no constitutional violation, or where the constitutional

18 right was not clearly established at the time. *See id.* Where either circumstance exists, defendants

are entitled to dismissal.

19

20

*1.    Defendants Have Submitted Critical Factual Allegations Enabling the Court to Evaluate Whether They Had Reasonable Probable Cause for Arrest*

21

In its previous order on summary judgment, the Court denied the request of Defendants

22

23 of fact as to whether the detention was a *Terry* stop or an arrest." Order Re: Summ. J., 22, 23. Because, as discussed below, Defendants have demonstrated ample probable cause for an arrest, the Court assumes for purposes of this motion that it was an arrest, and will refer to it as such throughout this order.

24 ORDER GRANTING IN PART SECOND MOTION FOR
SUMMARY JUDGMENT

25  - 4

Vincent, Jaros, and Myers for qualified immunity.[2] Defendants argued, among other things, that they were entitled to qualified immunity because their actions were supported by probable cause to arrest Plaintiffs Paul and Shopbell. The Court determined that Defendants had failed to proffer the "articulable facts" necessary to determine whether Defendants even arguably had probable cause to arrest, necessary for qualified immunity to apply. *Id.*, at 24. All three Defendants' declarations lacked any meaningful factual specificity, stating at most only some version of "from everything I knew about the investigation relating to these two individuals, I knew we had ample probable cause to place both of them under arrest at that time." *See, e.g.*, Myers Decl., Dkt. No. 37, ¶ 5. The declarations were insufficient because they failed to outline what facts were known to the officers at the time of the putative arrests, and failed to aver even that Defendants had read the affidavits that Willette submitted in support of the search warrants. Furthermore, the declarations conveyed only the officers' subjective belief in probable cause. Because "[t]he Supreme Court has made clear that an officer's subjective thoughts play no role in the Fourth Amendment analysis," however, these averments were insufficient for the Court to ascertain whether the officers were entitled to qualified immunity. *United States v. Ramirez,* 473 F.3d 1026, 1030 (9th Cir. 2007) (citing *Whren v. United States*, 517 U.S. 806, 811–13 (1996)).

In this second attempt to establish that they had reasonable probable cause and are

---

[2] Plaintiffs argue the Court should summarily deny Defendants' second attempt to obtain qualified immunity, citing a provision in the Court's Standing Order that provides "[m]otions that reassert prior arguments or raise new arguments that could have been made earlier will be summarily denied." Dkt. # 25 at 5. The Court acknowledges that motions for reconsideration are disfavored, but finds that reasoned consideration of this second motion is appropriate, where the case presents a complex intersection of claims and defendants and Defendants' first motion explicitly anticipated that a second motion for summary judgment might be filed (*see* Mot. for Partial Summ. J. at 17, n.5); where this second motion provides additional detail that the Court explicitly found lacking in the previous motion; and where the interests of justice will be most efficiently served by adjudicating the arguments on the merits, rather than denying Defendants' motion on this technicality. Where, as here, Defendants have demonstrated the absence of a genuine dispute of material fact, forcing the parties to trial would not be an appropriate use of judicial or party resources.

therefore entitled to qualified immunity from Plaintiffs' false arrest claims, Defendants submit declarations containing crucial details missing from the declarations supporting their first motion. All three Defendants swear to an account of what occurred on the morning of the putative arrest, containing the following facts: that they attended Wendy Willette's briefing (in person or by telephone conference) the morning of June 13, 2016; that they reviewed the warrants *and affidavits* related to the searches planned that morning; and that they concluded probable cause to arrest Paul and Shopbell existed based "on the facts listed in the affidavit that described the multiple felonious and misdemeanor activities that had been committed by both Paul and Shopbell" and specifically, "that both suspects had been engaged in unlawful trafficking of shellfish, unlawful catch accounting, and illegal possession and sale of shellfish." Myers Decl., ¶¶ 4-6; Jaros Decl., ¶¶ 3-6 ("[Willette's] affidavit described and laid out clear probable cause that both suspects had been engaged in unlawful trafficking of shellfish, unlawful catch accounting, and illegal possession and sale of shellfish."); Vincent Decl., ¶5. As the Court has already found, the warrant affidavits contain sufficient factual details—even after excising allegations to which Plaintiffs have objected—to establish probable cause for the searches. Order Re: Summ. J., at 16-17. On their face, the affidavits also contain sufficient factual detail to support reasonable probable cause to believe Plaintiffs had committed the offenses outlined therein. *See* Search Warrant Affidavits, Willette Decl., Dkt. No. 44, Exs. 2, 3 at 5 (alleging among other things that based on information gathered in prior searches, PSSD failed to submit 16 fish receiving tickets ("FRTs") between 3/12/14 and 01/08/16, in violation of RCW 77.15.630, Unlawful Fish and Shellfish Catch Accounting; and stating "[d]espite not being licensed to buy or sell bivalve shellfish, I saw multiple instances of [PSSD] engaging in the industry," also in violation of Washington law, RCW 69.30.110).

ORDER GRANTING IN PART SECOND MOTION FOR
SUMMARY JUDGMENT
- 6

Plaintiffs dispute Defendants' allegations, and in particular attempt to cast doubt on whether Defendants read or even received the affidavits, or were otherwise made aware of the facts contained therein. The Court finds these attempts unavailing. The allegations Plaintiffs' counsel makes that might arguably create a dispute of fact if they were true, are not; and counsel has repeatedly made assertions that are not supported by the exhibits cited, and that are, at best, misleading.[3] For example, Plaintiffs claim that "[i]ndividual Defendants had no previous knowledge about Plaintiffs" before the June 13, 2016 briefing. Pls.' Opp. Br. at 8. However, the exhibit that counsel cites for this broad statement is deposition testimony of Wendy Willette, discussing Defendants' knowledge of *one specific aspect* of the investigation into Plaintiffs' activities: the allegations of then-confidential informant John Richardson. *See id.*, citing Ex. K at 16-18 ("Q. Would officer Vincent [and officer Jaros] have known about the Richardson allegations prior to [their] involvement in the warrant activities on June 13th, 2016? A. I -- I don't know. I don't think so, but I don't know."). This testimony barely proves that Defendants had "no previous knowledge" of Richardson's allegations specifically, let alone that they had "no previous knowledge" of Plaintiffs generally. And in fact contrary to counsel's assertion, Plaintiffs' own exhibits show that Defendants had received information about Plaintiffs prior to the June 13

---

[3] Some of Plaintiffs' allegations elsewhere in the opposition brief are similarly problematic. For example, counsel disputes the assertion in the search warrant affidavit that "Plaintiffs' purchase of clams in 2015 was illegal for want of a shellstock shipper license," by claiming that "[a]ccording to Tulalip, that shellfish also was legally harvested by Tulalip fishers and purchased by Plaintiffs." Pls.' Opp. Br. at 4. However, the exhibits to which counsel cites include: 1) a reference to a Tulalip shellfish technician's recollection regarding a certain *crab* purchase by PSSD, which in addition to stating nothing about clam purchases, does not even actually affirm that the crab purchase was legal (and in fact states "no one from the tribe has authority to give a company permission to purchase crab after the closure"), *see* Dkt. No. 48-1 at 2; and 2) a letter from the Tulalip Tribes Shellfish Program Manager, concerning "a report detailing the status of *Dungeness crab* sales," affirming that "[a]t this time, no sales of Dungeness crab by your company [PSSD] are coded as illega1." Galanda Decl., Ex. H (emphasis added). Even if the letter is interpreted as dealing with clam sales, it is dated a year and a half after the affidavit, and thus would not bear on whether the statement in the affidavit regarding clam sales was truthful when made.

ORDER GRANTING IN PART SECOND MOTION FOR
SUMMARY JUDGMENT
- 7

1    briefing. *See, e.g.*, Galanda Decl., Ex. V (June 8, 2016 email from Willette to Defendants, among

2    others, containing "safety plan" for execution of search warrants of the homes of "suspects" Paul

3    and Shopbell); *Id.*, Ex. II (June 8, 2016 email from Willette to Vincent and others regarding the

4    search warrants, stating "[t]he case is related to catch accounting fraud regarding primarily crab").

5         Similarly, Plaintiffs assert that Vincent "never received the Tribal Court warrant affidavit

6    by email," and that "[a]t the moment of Plaintiffs' arrest, Individual Defendants had not read any

7    warrant affidavit and did not otherwise believe there was probable cause for arrest." Pls.' Opp. Br.

8    at 8, 20. Again, the evidence cited for these assertions does not support them. At best, the exhibits

9    contain an absence of proof that Defendants had been emailed the affidavits *on certain specific*

10   *occasions*, which is hardly proof Defendants had *never* received or read the affidavits. *See, e.g.*,

11   Galanda Decl., Ex. U (Officer Duty Log of Vincent's activity and location at certain times during

12   June 13, 2016, *e.g.* "0700- > MILL CRK; 0750- OUT; 0940- > TULALIP PD; 1020- OUT,"); Ex.

13   V (June 8, 2016 email from Willette to Defendants and others re: search warrant safety plan,

14   without affidavits or warrants attached); Ex. T at 50 (deposition testimony of Vincent, affirming

15   he does not recall taking Willette up, on June 8, on her offer to send warrant affidavits).

16        This evidence is simply insufficient to create a dispute of fact concerning Defendants'

17   unequivocal testimony that they "carefully reviewed the affidavit and search warrant supplied to

18   us by Detective Wendy Willette." *See, e.g.,* Vincent Decl., ¶ 5. As a consequence, the Court

19   concludes that the three remaining named Defendants were aware of the facts contained in the

20   search warrant affidavits. These facts support a reasonable belief that they had probable cause to

21   arrest Plaintiffs on June 13, 2016. Because the existence of probable cause entitles Defendants to

22   qualified immunity from Plaintiffs' §1983 false arrest and false imprisonment claims, the Court

23   hereby dismisses these claims. *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1024 (9th Cir.

24
     ORDER GRANTING IN PART SECOND MOTION FOR
     SUMMARY JUDGMENT
25    - 8

2009).

### 2. Defendants Have Provided Facts and Argument Supporting the Conclusion That They Are Entitled to Benefit from the Collective Knowledge Doctrine

The Court additionally concludes that Defendants are entitled to dismissal of these claims based on the "collective knowledge" of the WDFW team supporting probable cause. In their first motion, Defendants made no attempt to demonstrate that they were entitled to benefit from this doctrine. Although Defendants quoted the Ninth Circuit's definition of the doctrine outlined in *Ramirez*, they failed to argue, let alone establish, that the doctrine should apply to them, and instead merely repeated that Defendants "were aware of and correctly believed the warrants supported ample probable cause to arrest these two Plaintiffs." Defs.' Mot. for Partial Summ. J., Dkt. No. 68, at 16. Based on the supplemental allegations and argument Defendants have provided in this second motion for summary judgment, the Court concludes that the collective knowledge doctrine applies in this case even if the named Defendants had not read Willette's affidavits.

Under the collective knowledge doctrine, courts evaluating a Fourth Amendment claim are to look to "the collective knowledge of all the officers involved in the criminal investigation although all of the information known to the law enforcement officers involved in the investigation is not communicated to the officer who actually [undertakes the challenged arrest]." *Ramirez*, 473 F.3d at 1032 (citing *United States v. Sutton*, 794 F.2d 1415, 1426 (9th Cir.1986)). The doctrine also applies "where law enforcement agents are working together in an investigation but have not explicitly communicated the facts each has independently learned," provided that "there has been communication among agents." *Id.* (citing *United States v. Del Vizo*, 918 F.2d 821, 826 (9th Cir.1990)). The doctrine also applies "where an officer (or team of officers), with

ORDER GRANTING IN PART SECOND MOTION FOR
SUMMARY JUDGMENT
- 9

direct personal knowledge of all the facts necessary to give rise to reasonable suspicion or probable cause, directs or requests that another officer, not previously involved in the investigation, conduct a stop, search, or arrest." *Id*. at 1033.

Application of the collective knowledge doctrine is appropriate in this case viewed through either lens described above, both because Defendants were working as part of an investigatory team, and because they were directed by officers with knowledge of all relevant facts to detain the Plaintiffs. First, as discussed above, the affidavits submitted in support of the search warrants demonstrate that Detective Willette was in possession of "all the facts necessary" to support probable cause to arrest the Plaintiffs—whether or not that was the plan at the outset of the day. *See* Willette Decl., Exs. 2, 3 (affidavits discussing facts supporting probable cause to conclude that Plaintiffs had committed illegal activities outlined therein).

Second, there can be little dispute that the three Defendants were "working together in an investigation" with Willette and others who attended the briefings and aided in the service of the search warrants on June 13. On the morning of June 13, all three Defendants attended one or more of the briefings, and before that had received information regarding the operation from Willette. *See supra* §§ II., III.B.1. Myers states that at the briefing "Detective Willette told me that she would like Plaintiffs Shopbell and Paul to be taken into custody and transported to the Marysville Police Department (MPD) to be interviewed," and "that there was sufficient probable cause to detain, arrest, and interview Plaintiffs Shopbell and Paul." Myers Decl., ¶ 5. Vincent and Jaros were directed by a superior "to proceed to the boat launch and make contact with Plaintiff Shopbell, detain him for questioning, and seize his cellular telephone pursuant to a warrant," and eventually were "requested to transport Plaintiffs Shopbell and Paul to the Marysville Police Department (MPD) to be interviewed." Vincent Decl., ¶¶ 6, 7.

ORDER GRANTING IN PART SECOND MOTION FOR
SUMMARY JUDGMENT
- 10

1        Therefore, under the collective knowledge doctrine, Defendants were entitled to rely on

2   the direction of their fellow officers, who they reasonably believed possessed information

3   supporting probable cause. As the Ninth Circuit has observed,

4        The accepted practice of modern law enforcement is that an officer often makes
    arrests at the direction of another law enforcement officer even though the arresting
5   officer himself lacks actual, personal knowledge of the facts supporting probable
    cause.... The rule exists because, in light of the complexity of modern police work,
6   the arresting officer cannot always be aware of every aspect of an investigation;
    sometimes his authority to arrest a suspect is based on facts known only to his
7   superior or associates.

8   *Ramirez*, 473 F.3d at 1037.

9        Plaintiffs argue the collective knowledge of the investigatory team should not be imputed

10  to the three named Defendants because, they claim, Willette did not communicate "what [she

11  knew] about Plaintiffs" to Defendants before the arrests; according to Plaintiffs' brief, the

12  "[i]ndividual Defendants had no knowledge of Plaintiffs before June 13, 2016." Pls.' Opp. Br. at

13  21. This argument fails for two reasons. First, as discussed more fully above, Plaintiffs' allegation

14  that Defendants "had no knowledge" of Plaintiffs before the arrests is unsupported and

15  demonstrably false. Second, the collective knowledge doctrine does not require officers to have

16  shared the specific information constituting probable cause. Indeed, *Ramirez* explicitly rejected

17  the argument that "the information conveyed to the [officer conducting the arrest] must relate in

18  some meaningful way to suspected criminal activity." *Ramirez*, 473 F.3d at 1036 (citation

19  omitted). Instead, in a holding that applies squarely to this case, the Ninth Circuit concluded that

20  "the collective knowledge doctrine includes no requirement regarding the content of the

21  communication that one officer must make to another. Where one officer knows facts constituting

22  reasonable suspicion or probable cause (sufficient to justify action under an exception to the

23  warrant requirement), and he communicates an appropriate order or request, another officer may

24  ORDER GRANTING IN PART SECOND MOTION FOR
    SUMMARY JUDGMENT
25   - 11

1    conduct a warrantless stop, search, or arrest without violating the Fourth Amendment." *Ramirez*,

2    473 F.3d at 1037. The minimal communication requirement of the doctrine is intended merely to

3    distinguish "officers functioning as a team from officers acting as independent actors who merely

4    happen to be investigating the same subject." *Id*. at 1036. But "[i]t is well-established that when

5    an order to stop or arrest a suspect is communicated to officers in the field, the underlying facts

6    constituting probable cause or reasonable suspicion need not be communicated." *Id*., quoting

7    *United States v. Shareef*, 100 F.3d 1491, 1503 (10th Cir. 1996).

8          In sum, Defendants have demonstrated that the information known to Willette and the rest

9    of the investigatory team may be imputed to the three remaining named Defendants. For this

10   reason as well, Plaintiffs' false arrest and false imprisonment claims against those Defendants

11   must be dismissed.

12   **C.  Claims for Conspiracy to Violate Civil Rights**

13         Defendants also seek dismissal of claims that they conspired to violate Plaintiffs' civil

14   rights, brought under either 42 U.S.C. § 1985 or § 1988.[4] Plaintiffs appear to concede that the

15   only such claims they have asserted would be against Defendants Willette, Golden, and Cenci, all

16   of whom have been dismissed. *See* Pls.' Opp. Br. at 22. In response to Defendants' request for

17   dismissal of these claims, Plaintiffs do not outline in what way those Defendants (or any others)

18   could be found to have committed civil conspiracy, stating vaguely only that "Det. Willette

19   admitted to her, Lt. Golden, and Chief Cenci's scheme to deprive Plaintiffs' constitutional rights,"

20   without citation to any supporting facts or exhibits. To the extent any such claims arguably

21

22   _____

     [4] Plaintiffs' operative Third Amended Complaint asserts the "THIRD CAUSE OF ACTION – 42 U.S.C. § 1988:

23   CONSPIRACY TO VIOLATE PLAINTIFFS' CIVIL RIGHTS" Dkt. No. 81, ¶¶ 54-60, but in their opposition to
     Defendants' motion, Plaintiffs concede "Defendants are correct that 42 U.S.C. § 1985, not 42 U.S.C. § 1988,
     govern[s] a portion of Plaintiffs' civil conspiracy claims." Pls.' Opp. Br. at 22, n.15.

24   ORDER GRANTING IN PART SECOND MOTION FOR
     SUMMARY JUDGMENT

25   - 12

1    remain, therefore, the Court hereby dismisses them.[5]

2    **D.  State Law Negligence Claims**

3          Finally, Defendants ask the Court to dismiss Plaintiffs' negligence claims, asserted against

4    WDFW: (1) vicariously, for the negligence of its employees (Fourth Cause of Action); and (2)

5    directly, for "negligent supervision and training" (Fifth Cause of Action). *See* TAC, ¶¶ 61-66; 67-

6    71.[6] Defendants concede that the individual named officers were acting in their capacity as

7    WDFW employees, and argue that therefore, under Washington law, Plaintiffs' direct liability

8    claims should be dismissed as superfluous, as they "collapse" into their vicarious liability claims.

9    Defs.' Mot. at 12, citing *LaPlant v. Snohomish County*, 162 Wash. App. 476, 480 (2011) (A

10   "claim for negligent hiring, training, and supervision is generally improper when the employer

11   concedes the employee's actions occurred within the course and scope of employment.").

12   Defendants also argue that Plaintiffs have failed to establish, as required under the "public duty

13   doctrine," that Defendants owed a duty of care specifically to Plaintiffs, rather than to the public

14   generally.

15

16
17   [5] Plaintiffs assert that the Court's dismissal of these three defendants in its prior order was "*sua sponte*," claiming Defendants did not expressly seek dismissal of the civil conspiracy claim in their first motion for summary
18   judgment. The Court rejects the implication that the dismissal was somehow improper. Under the heading "Relief Requested," that motion stated "Defendants request that this Court dismiss all claims relating to any alleged civil rights violations that Plaintiffs have made against them." Mot. for Partial Summ. J., at 1; *see also id.*, at 4 ("Deputy
19   Chief Mike Cenci . . . [and] Deputy Chief Paul Golden [are] entitled to dismissal based on . . . qualified immunity."). The Court granted that request as to Willette, Golden, and Cenci, because the only allegations Plaintiffs raised in
20   their opposition to the motion did not meet Plaintiffs' burden of demonstrating that those defendants were not entitled to qualified immunity. Order Re: Summ. J. at 18, 26. Acknowledging "the relatively complex and overlapping intersection of Defendants, events, theories of liability, proposed grounds for dismissal, and objections
21   thereto, and that neither side has provided the Court with a comprehensive articulation of which claims and Defendants should or should not be dismissed," the Court directed the parties to clarify what claims and Defendants remained after entry of the order. In response, Plaintiffs acknowledged that their "federal civil rights claims" against
22   the three had been dismissed and in fact, subsequently amended their Complaint to direct the conspiracy claims against only Defendants Jaros, Vincent, and Myers. TAC, ¶¶ 54-60.
23   [6] WDFW waived its right to claim sovereign immunity under the Eleventh Amendment by voluntarily removing this matter to federal court. *See Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613, 619–20 (2002).

24   ORDER GRANTING IN PART SECOND MOTION FOR
     SUMMARY JUDGMENT
25   - 13

Plaintiffs' opposition begins with a discourse on "The Historical Impact Of An Employer's Admission Of Vicarious Liability," involving citation to a law review article, a discussion of the public policy underlying Washington comparative fault law, and a survey of related law in other states. Pls.' Opp. Br. at 22-26. Similarly, Defendants' invocation of the public duty doctrine would require the Court to resolve novel matters of state law. These uniquely state-law disputes are precisely the sort that a federal court should hesitate to resolve, particularly so in this case, where all federal claims forming the basis for removal have been dismissed. *See* 28 U.S.C. § 1367(c)(1) & (3) ("[D]istrict courts may decline to exercise supplemental jurisdiction . . . [if] the claim raises a novel or complex issue of State law, [or] the district court has dismissed all claims over which it has original jurisdiction."); *see Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001). For these reasons, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims, and remands this case to the King County Superior Court, from which this matter was removed.

## IV.     CONCLUSION

For the foregoing reasons, the remaining named Defendants Vincent, Jaros, and Myers are hereby DISMISSED. Plaintiffs' state-law claims against WDFW are remanded to the Superior Court of King County for further consideration.

DATED this 18th day of February, 2021.

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER GRANTING IN PART SECOND MOTION FOR
SUMMARY JUDGMENT
- 14